IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NISHA RAO,

        Plaintiff,

        v.

AMERISOURCEBERGEN CORP.,

        Defendant.

_____/

No. CIV S-08-1527 DAD PS

ORDER

This matter came before the court on October 30, 2009 for hearing of defendant's motion for summary judgment (Doc. No. 30). Plaintiff Nisha Rao, proceeding pro se, appeared telephonically on her own behalf. Attorneys Matthew Ruggles and Adrianne Ostrowki appeared on behalf of defendant AmerisourceBergen Corporation. Oral argument was heard, and defendant's motion for summary judgment was taken under submission.[1]

/////

/////

---

[1] On October 28, 2009, plaintiff filed a modified request for a continuance of the hearing date on the motion for summary judgment to allow her additional time to seek legal representation. (Doc. No. 39.) That motion was denied by the court at the hearing for the reasons set forth on the record and the hearing went forward with the court hearing further argument from plaintiff in opposition to defendant's motion for summary judgment. This order confirms the denial of plaintiff's modified request for a continuance of the hearing date.

1

1   For the reasons set forth below, the court will grant defendant's motion for
2   summary judgment.[2]

3   BACKGROUND

4   Plaintiff filed her original complaint against defendant AmerisourceBergen Corp.
5   and DOES 1-5 in Sacramento County Superior Court on January 7, 2008.[3] (Doc. No. 1 at 7 of
6   25.) On May 22, 2008, plaintiff filed an amended complaint in that court. (Id. at 15 - "Am.
7   Compl.".) In plaintiff's amended complaint she alleges as follows.[4] Plaintiff was hired as a
8   permanent employee by defendant AmerisourceBergen Corporation on or about October 4, 2004.
9   Defendant subjected her to harassment and misrepresentation. Specifically, plaintiff claims that
10  defendant refused to accommodate her when she requested to be reassigned to a different
11  position and requested to work part-time. Plaintiff also states that the delivery of a letter noticing
12  her rehiring was delayed by the mail carrier until after the provided deadline for response but
13  defendant refused to acknowledge the delivery error. Plaintiff contends that defendant failed to
14  maintain policies or procedures to prevent her from being subjected to discrimination and
15  harassment and that as a result of defendant's actions she suffered emotional distress, nervous
16  pain and suffering. Based on these allegations, plaintiff presented the following six causes of
17  action: 1) failure to accommodate; 2) failure to prevent harassment; 3) negligent training; 4)
18  misrepresentation; 5) racial discrimination; and 6) disability discrimination. (Id. at 15-21.)
19  /////

---

[2] Both parties have filed consented to magistrate judge jurisdiction in this civil action in accordance with 28 U.S.C. § 636(c)(1). (Doc. Nos. 19, 20.)

[3] On December 19, 2008, following the initial status conference, the court granted plaintiff ninety days in which to further amend her complaint so as to name the Doe defendants. (Doc. No. 22.) Plaintiff did not amend her complaint and thus AmerisourceBergen Corp. is the only defendant in this action.

[4] The facts alleged in plaintiff's amended complaint are quite sparse. As a result, most of the factual details concerning this matter have been provided in connection with defendant's motion for summary judgment.

On July 2, 2008 defendant removed this action to this court pursuant to 28 U.S.C. § 1441(b) based on this court's diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. No. 1.) Defendant filed an answer to plaintiff's complaint on July 7, 2008. (Doc. No. 8.) Thereafter, a scheduling order was issued under which discovery closed in this action on October 2, 2009. (Doc. No. 23.) Defendant filed a timely motion for summary judgment on September 29, 2009. (Doc. No. 30.) Plaintiff filed an initial opposition to defendant's motion on October 13, 2009.[5] (Doc. No 32.) Defendant's reply was filed on October 23, 2009. (Doc. No. 34.) Plaintiff thereafter filed a second opposition to the motion for summary judgment on October 26, 2009. (Doc. No. 36.) Plaintiff then filed an opposition to defendant's reply on October 28, 2009. (Doc. No. 38.)[6]

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I. <u>Legal Standards Applicable to a Motion for Summary Judgment</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Owen v. Local No. 169</u>, 971 F.2d 347, 355 (9th Cir. 1992).

> A party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

/////

---

[5] In that same filing plaintiff requested an "Extension and or Request to Amend the Complaint." Plaintiff's motion for an extension of time and/or for further leave to amend was denied by the court's order issued on October 27, 2009. (Doc. No 35.)

[6] In light of plaintiff's pro se status, the court has considered these otherwise unauthorized pleadings.

1  "[W]here the nonmoving party will bear the burden of proof at trial on a
2  dispositive issue, a summary judgment motion may properly be made in reliance solely on the
3  'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp., 477
4  U.S. at 323. Indeed, summary judgment should be entered, after adequate time for discovery and
5  upon motion, against a party who fails to make a showing sufficient to establish the existence of
6  an element essential to that party's case, and on which that party will bear the burden of proof at
7  trial. See id. at 322.

8  "[A] complete failure of proof concerning an essential element of the nonmoving
9  party's case necessarily renders all other facts immaterial." Id. Summary judgment should then
10 be granted, "so long as whatever is before the district court demonstrates that the standard for
11 entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

12 If the moving party meets its initial responsibility, the burden then shifts to the
13 opposing party to establish that a genuine issue as to any material fact actually does exist.
14 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of
15 Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607
16 F.2d 1276, 1280 (9th Cir. 1979). The opposing party must demonstrate that a fact in contention
17 is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that
18 the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
19 the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec.
20 Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The "purpose
21 of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether
22 there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)
23 advisory committee's note on 1963 amendments).

24 II. Application of the Standards

25 Defendant seeks summary judgment in its favor on plaintiff's third cause of action
26 for negligent training on the ground that plaintiff's exclusive remedy is under the Workers'

4

n
n

1  Compensation Act and that this cause of action is therefore barred. Defendant also seeks
2  summary judgment in its favor on plaintiff's fifth cause of action for racial discrimination on the
3  ground that plaintiff failed to properly exhaust her administrative remedies. With respect to
4  plaintiff's other causes of action, defendant argues that summary judgment should be granted in
5  defendant's favor because the evidence establishes that plaintiff cannot prove the necessary
6  elements with respect to her claims.

Defendant's motion includes a separate statement of undisputed material facts supported by plaintiff's deposition testimony[7], the declaration of defendant's Human Resources Coordinator Michelle Westervelt, the declaration of Human Resources Manager Ken Howie, a copy of a Collective Bargaining Agreement between defendant and the International Brotherhood of Teamsters Union, documents submitted to defendant from plaintiff's physician, the applicable job description for an Order Filler, and correspondence between plaintiff and other employees of defendant.

Defendant's Statement of Undisputed Material Facts (Doc. No. 30) establishes the following. Plaintiff was hired on October 4, 2004, as an Order Filler at defendant's National Facility in Sacramento, CA. Order Fillers at defendant's National and Sacramento Distribution Center are covered by a Collective Bargaining Agreement ("CBA") between defendant and the International Brotherhood of Teamsters Union. There are no Order Filler positions in defendant's warehouses not within the CBA. As an Order Filler plaintiff was primarily responsible for filling customer orders, retrieving merchandise, and placing merchandise in containers. The Order Filler position requires that an employee be able to perform substantial

---

[7] Plaintiff has requested that this court strike the deposition transcripts from record on the ground that she took medication on the day of her deposition and was later told by a doctor that "it is not ok to take deposition when all these tablets taken together." (Doc. No. 32 at 5.) However, at her deposition plaintiff acknowledged on the record that she had taken medication, provided the names and dosages of those medications and stated that the medications would not affect her ability to testify truthfully. (Pl.'s Dep. at 13-16.) Accordingly, plaintiff's request to strike her deposition is denied.

n

1   physical activity, including, standing, walking, bending, kneeling, stooping, and lifting of up to
2   65 pounds.
3           On January 15, 2005, plaintiff experienced pain in her foot while at work and on
4   February 1, 2005, plaintiff's husband contacted Human Resources Coordinator Michelle
5   Westervelt and stated that plaintiff was going to be taking off the remainder of the work week
6   due to pain in her feet. On February 4, 2009 Dr. Jarvis from U.S. Healthworks informed
7   defendant that plaintiff should see a podiatrist on a non-industrial basis and that her injury was
8   not work related.[8] On February 9, 2005, plaintiff's physician took plaintiff off work through
9   March 1, 2005. As of February 9, 2005, plaintiff had been employed by defendant for less than
10  12 months and therefore did not qualify for protected leave under the Family and Medical Leave
11  Act or the California Family Rights Act. On February 21, 2005, defendant sent plaintiff a letter
12  notifying her that even though she was on unpaid leave, she was still covered under her employee
13  benefits plan. On March 2, 2005, defendant received a note from plaintiff's physician stating that
14  plaintiff would not be returning to work for twelve weeks because of a required foot surgery. On
15  April 1, 2005, defendant terminated ten Order Fillers, including plaintiff, due to a loss of
16  business. Plaintiff was selected for termination in accordance with the terms of the CBA which
17  provided that, in the event of a reduction in work force, the last employee hired would be the first
18  employee fired. As of April 1, 2005, plaintiff's seniority ranked 239 out of 247 employees. On
19  April 15, 2005, defendant sent a certified letter to plaintiff recalling her to work pursuant to the
20  CBA. Plaintiff failed to respond to the letter recalling her to work within the four-day time
21  period provided to do so. Although plaintiff did not timely respond to the April 15, 2005 letter,
22  plaintiff's name remained on the defendant's recall to work list.
23  /////

---

[8] While it seems possible that the 2009 date may be an error, both defendant's Statement of Undisputed Facts and the Declaration of Michelle Westervelt state that this event took place in 2009.

Plaintiff, however, was not cleared by her physician to return to work for nearly six more months. On October 7, 2005, plaintiff's physician released her to return to work with restrictions. In this regard, plaintiff was limited to one to two hours of standing or walking at a time, with thirty minutes of sitting in between. The restrictions also noted that it was preferable that plaintiff perform sedentary duty. On October 31, 2005, defendant's Human Resources Coordinator Michelle Westervelt met with plaintiff to discuss her return to work.

Westervelt informed plaintiff that defendant was not currently recalling any employees and that the duties of an Order Filler required that she be able to stand, walk, and lift up to 65 pounds. Plaintiff requested a part-time or sitting position that would allow her to sit for six hours and stand for two hours. Plaintiff also requested a transfer to another warehouse. Westervelt explained that while there were no positions available at that time that would accommodate plaintiff's restrictions, plaintiff would remain on defendant's recall to work list. On November 29, 2005, defendant again sent plaintiff a certified letter recalling her to work due to an increase in business. Plaintiff once again failed to timely respond to this letter.

However on December 5, 2005, plaintiff gave defendant a doctor's note stating that she was undergoing a revisional surgery on her foot and would not be able to return to work until March 15, 2006. On December 12, 2005, defendant notified plaintiff that because she was unable to return to work until March 2006, plaintiff would lose her seniority and would be dropped from the recall to work list pursuant to the terms of the CBA. The CBA provided that an employee's seniority shall be considered broken and employment terminated by twelve consecutive months of unemployment due to lay off. In February of 2006, defendant announced that it would be closing its Sacramento warehouse and would begin terminating its employees there. By April of 2006 defendant had reduced its workforce from 247 to 120 employees.

By mid-July 2006, the National Facility was closed. Even if plaintiff had remained on the recall list and been able to return to work in March of 2006, defendant was not recalling any employees but instead laying off additional employees as of that time. As of May

26, 2009, plaintiff remained unable to lift 65 pounds, unable to stand or walk and unable to perform the physical demands of the Order Filler position. Defendant has an Equal Employment Opportunity Affirmative Action Policy. Plaintiff never witnessed anyone violate the equal employment opportunity or anti-discrimination policy at defendant AmerisourceBergen. No one at defendant AmerisourceBergen ever said anything derogatory or rude or demeaning to plaintiff or treated plaintiff differently because of her race or national origin. Plaintiff was never harassed while she worked at defendant AmerisourceBergen. Plaintiff never heard any employee at AmerisourceBergen make any demeaning or negative remarks to plaintiff regarding her race and/or national origin. Plaintiff never complained of harassment or discrimination while she was employed by defendant. When making the April 1, 2005, decision to lay-off ten employees due to a decline in business, plaintiff's leave of absence was never considered nor was her leave of absence considered when defendant decided not to re-hire her.

On January 11, 2006, plaintiff filed a Complaint of Discrimination with the California Department of Fair Employment and Housing ("DFEH") alleging disability discrimination. In that complaint plaintiff did not allege the she was discriminated against because of her race, color, or national origin. The DFEH conducted an investigation and on January 11, 2007, issued a Notice of Case Closure, finding the absence of probable cause to believe a violation of the statute had occurred.

As required by the standards applicable to motions for summary judgment, defendant has identified portions of the pleadings, materials obtained through discovery, and affidavits that demonstrate the absence of a genuine issue of material fact as to plaintiff's claims. The burden thus shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. Plaintiff must demonstrate that any fact in contention is material, i.e., it might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence might lead a reasonable jury to return a verdict for plaintiff.

/////

As noted above, plaintiff filed two oppositions to defendant's motion for summary judgment. However, neither of those oppositions comply with Local Rule 260(b), which requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny each fact. The opposing party is also required to cite evidence in support of each denial. In the absence of the required admissions and denials, the court has reviewed plaintiff's arguments and evidence in an effort to discern whether plaintiff denies any fact asserted in defendant's statement of undisputed facts and, if so, what evidence plaintiff has offered that may demonstrate the existence of a disputed issue of material fact.

A.   <u>Failure To Accommodate</u>[9]

Plaintiff asserts that defendant failed to reasonably accommodate her disability. Specifically, plaintiff alleges in her amended complaint that defendant AmerisourceBergen refused to provide her a part-time position and refused to assign her to a different job as she had requested. (Doc. No. 1 at 17.)

Defendant argues that it is entitled to summary judgment with respect to this claim because plaintiff cannot prove that she was a qualified individual who could perform the essential functions of the Order Filler position, the accommodations plaintiff requested were unreasonable, and because the FEHA does not obligate an employer to accommodate a disabled employee if the employer has already decided to terminate that employee for legitimate business reasons. (Def.'s Mem. of P.&A. at 12-18.)

In opposition to defendant's motion plaintiff asserts that she had previously worked in other positions for defendant that did not require walking. (Doc. No. 36 at 4 of 12.) Plaintiff argues that if she was previously qualified to work in those positions, she must therefore have been qualified to work in those positions at the time of her request for accommodation.

---

[9] Plaintiff characterizes this cause of action as being for "Employment Harassment." (Doc. No. 1 at 17.)

1  (Id.) Plaintiff also argues that because she worked overtime hours for defendant when needed, her request to work part-time was reasonable. (Id.)

Under California law, "[t]he elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." Scotch v. Art Institute of California, 173 Cal. App.4th 986, 1009-10 (2009) (citing Wilson v. County of Orange, 169 Cal. App.4th 1185, 1192 (2009)). A reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." Nadaf-Rahrov v. Neiman Marcus Group, Inc., 166 Cal. App.4th 952, 974 (2008).

Under FEHA, evidence of the essential functions of a position "includes, but is not limited to . . . [t]he employer's judgment as to which functions are essential . . . [and w]ritten job descriptions prepared before advertising or interviewing applicants for the job." Cal. Gov. Code § 12926, subd. (f)(2)(A) and (B)). According to the job description submitted by defendant in support of their motion, the physical requirements of the Order Filler position demand that the employee be able to stand, walk (or otherwise be mobile), reach, bend, kneel, stoop, grasp and lift up to 65 pounds. (Def's. Ex. E at 104 of 140.) Plaintiff has provided no evidence contradicting or challenging this description of the essential functions of the Order Filler position.

Moreover, at her deposition plaintiff acknowledged that prior to October of 2005 she was unable to return to work in any manner. (Pl.'s Dep. at 109.) Plaintiff also conceded that when she sought to return to work in October of 2005, she was not able to perform the lifting, standing, walking, reaching, bending, kneeling and stooping demanded of the Order Filler position. (Pl.'s Dep. at 104-07.) The evidence before the court establishes that plaintiff was, in fact, still unable to perform those functions at the time her May 26, 2009 deposition. (Id.) Plaintiff also testified that because of her condition in October of 2005 she required a job that

would allow her to sit for six hours of an eight hour shift. (Id. at 102.)

Plaintiff has failed to present any evidence that she was qualified to perform the essential functions of the Order Filler position when she sought to return to work in October 2005. Indeed, plaintiff concedes that she was not qualified to perform the Order Filler position on a full-time basis, but claims she was qualified "for part-time only." (Doc. No. 36 at 4.) However, plaintiff has offered no evidence or argument as to how she was qualified to perform the physical demands of the Order Filler position on a part-time but not full-time basis given her apparent physical restrictions. Plaintiff has also failed to present any evidence that defendant could have modified or adjusted the workplace to enable her to perform the essential functions of the Order Filler position given her physical restrictions.

Plaintiff argues that there were other jobs that defendant could have assigned her that were sedentary and did not require walking. (Doc. No. 36 at 4.) However, even if such positions existed, plaintiff's claim would still fail because under FEHA defendant would only be obligated to reassign plaintiff "to another position within the company if there were an *existing, vacant* position for which [she] was qualified." Watkins v. Ameripride Services, 375 F.3d 821, 828 (9th Cir. 2004) (emphasis in original) (under FEHA defendant employer was not required to create a new position to accommodate its employee). Defendant has offered the declaration of Michelle Westervelt in support of their motion for summary judgment. Therein, Westervelt states that there were no existing, vacant positions for which plaintiff was qualified in October of 2005. (Westervelt Decl. at 5.) Plaintiff has offered no evidence to rebut this evidence presented by defendant.

Accordingly, with respect to this claim, plaintiff has failed to provide evidence establishing the existence of a disputed issue of material fact requiring a trial.

B. <u>Failure To Prevent Harassment</u>

Plaintiff alleges in her amended complaint that defendant knew or should have known that she was being harassed and failed to prevent that harassment. (Doc. No. 1 at 18.)

"An employer who knows or should have known of unlawful harassment . . . and fails to take immediate and appropriate corrective action, may be liable for the resulting damages, pursuant to [California] Government Code section 12940, subdivision (j)(1)." Thompson v. City Of Monrovia, 186 Cal. App.4th 860, 880 (2010). However, a plaintiff has no cognizable cause of action for failure to investigate unlawful harassment unless harassment actually occurred. (Id.)

Here, plaintiff has provided the court with no evidence in support of her claim that defendant knew or should have known about any unlawful harassment of her. Moreover, plaintiff acknowledged at her deposition that she was never harassed while employed at defendant AmerisourceBergen. (Pl.'s Dep. at 140.) There is thus no evidence before this court that any unlawful harassment actually occurred.

Accordingly, with respect to this claim, plaintiff has again failed to provide evidence establishing the existence of a disputed issue of material fact requiring a trial as to this cause of action.

C. Negligent Training

Plaintiff alleged in her amended complaint that defendant failed to properly and adequately train its employees and that had defendant done so, she would not have been harassed. (Doc. No. 1 at 18.) Defendant has moved for summary judgment in its favor as to this claim on the ground that plaintiff's claim is preempted by the exclusive remedies provisions of California's Workers' Compensation Act. (Def.'s Mem. of P.&A. at 19-21.) In this vein, defendant argues that "[a]n employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." Livitsanos v. Superior Court, 2 Cal.4th 744, 754 (1992).

In opposing the grant of summary judgment in favor of defendant, plaintiff argues that because she previously worked in positions other than that of an Order Filler, defendant was either negligent in having her work in those other positions or negligent in training Westervelt, because Westervelt refused to accommodate plaintiff's request to work in a position other than

1 Order Filler. (Doc. No. 36 at 4.) Plaintiff does not address defendant's argument that California's Workers' Compensation Act provides the exclusive remedy with respect to her claim.

As discussed above, plaintiff acknowledged in her deposition testimony that she was never harassed while employed at AmerisourceBergen. Plaintiff appears to be equating defendant's refusal to assign her to a position other than that of Order Filler with harassment. Plaintiff has presented this court with no evidence that another position for which she was qualified actually existed <u>and</u> was vacant. More importantly, plaintiff has failed to present any evidence of harassment for which defendant AmerisourceBergen could conceivably be found negligent in any way.

Accordingly, with respect to this claim, plaintiff has failed to come forward with evidence establishing the existence of a disputed issue of material fact requiring a trial.

D. <u>Intentional Misrepresentation</u>

Plaintiff next alleges that because defendant's employees were not properly and adequately trained, they made intentional misrepresentations to her. (Doc. No 1 at 19.) Specifically, plaintiff alleges that Steve Olivera, a managerial employee, told her to "relax at the cost of Amerisource and come back with [sic] release letter." (<u>Id.</u>) Plaintiff also alleges that another unidentified senior employee told her at some point that she could "not do this job."[10] (<u>Id.</u>) Plaintiff argues these misrepresentations by defendant's employees resulted in her losing her job. (<u>Id.</u>) In moving for summary judgment on this cause of action, defendant argues that plaintiff is unable to present evidence establishing any of the elements for a claim of intentional misrepresentation. (Def.'s Mem. of P.&A. at 21-24.) Plaintiff does not address defendant's argument in either of her oppositions filed in response to the summary judgment motion.

/////

---

[10] Plaintiff does not specify to which job this employee was allegedly referring.

1 Under California law, an employer's promise to do something, made without the
2 intent to fulfill that promise, is "promissory fraud." Lazar v. Superior Court, 12 Cal.4th 631, 638
3 (1996). "The elements of fraud, which give rise to the tort action for deceit, are (a)
4 misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity
5 (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)
6 resulting damage." (Id.) (citations omitted.)

7 The significance of the statements alleged by plaintiff in her amended complaint
8 is entirely unclear. Presumably plaintiff is claiming that the statement attributed to Olivera was a
9 promise to plaintiff that she could return to her employment at anytime under any conditions as
10 long as she had a release from her doctor. Such a promise standing alone, even if proven, would
11 be insufficient to state a cognizable claim for fraud. For instance, "[a] promise of future conduct
12 is actionable as fraud only if made without a present intent to perform." Magpali v. Farmers
13 Group, Inc., 48 Cal. App.4th 471, 481 (1996). Assuming arguendo that plaintiff could prove that
14 Olivera made the statement that plaintiff attributes to him, she has offered this court no evidence
15 suggesting that at the time Olivera had no intention of fulfilling the promise. In short, plaintiff
16 has failed to even allege the necessary elements of a fraud claim (a false representation,
17 knowledge of the falsity, an intent to induce reliance and justifiable reliance resulting in damage),
18 let alone submit any evidence in support of such a claim. Defendant persuasively argues that
19 plaintiff's allegations with respect to this claim are conclusory. Plaintiff's claim is indeed so
20 vague and conclusory that it could be properly dismissed on that basis alone. See Jones v.
21 Community Redev. Agency, 773 F.2d 646, 649 (9th Cir. 1984) (pro se plaintiff's conclusional
22 allegations unsupported by facts properly dismissed by district court).

23 Plaintiff has failed to respond to defendant's motion for summary judgment by
24 coming forward with any evidence in support of this claim nor has she established the existence
25 of any disputed issue of material fact requiring a trial on this cause of action.
26 /////

E.  Racial Discrimination

Plaintiff alleges that defendant discriminated against her based on her race.  (Doc. No. 1 at 19-20.)  Defendant moves for summary judgment in its favor arguing that plaintiff failed to exhaust her administrative remedies with respect to this claim as required and that, in any event, her claim is devoid of merit in light of the evidence before the court.  (Def.'s Mem. of P.&A. at 24-27.)

"'Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain from the [DFEH] a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA . . . .  The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA.'"  Blum v. Superior Court, 141 Cal. App.4th 418, 422 (2006) (quoting Medix Ambulance Service, Inc. v. Superior Court, 97 Cal. App.4th 109, 116 (2002).

Here, it is undisputed that plaintiff filed an administrative complaint, but therein claimed only discrimination based on her alleged disability.  (Def's. Ex. T at 137.)  Plaintiff did not cite race or color as causes of the discrimination she alleged in her administrative.  (Id.)  Indeed, plaintiff acknowledges in one of her oppositions to the pending motion that she did not specifically allege racial discrimination in her administrative complaint, but argues that such a claim would necessarily have been discovered by the investigation of her disability discrimination claim.  (Doc. No. 36 at 4-5.)  Plaintiff contends that her claim of discrimination based on race is therefore exhausted.  (Id.)

"Incidents not described in a DFEH charge can be included in the subsequently filed lawsuit if they would necessarily have been discovered by investigation of the charged incidents, i.e., if the allegations in the civil complaint were 'like or related' to those specified in the DFEH charge."  Soldinger v. Northwest Airlines, Inc., 51 Cal. App.4th 345, 381 (1996).  "Essentially, if an investigation of what *was* charged in the [DFEH complaint] would necessarily

uncover other incidents that were not charged, the latter incidents could be included in a subsequent action." Okoli v. Lockheed Technical Operations Co., 36 Cal. App.4th 1607, 1615 (1995) (emphasis in original).

In her DFEH administrative complaint plaintiff checked the box indicating the cause of the discrimination she suffered was based on disability and stated:

> On February 2, 2005, I was denied a reasonable accommodation for my physical disability. I was hired in October 2003. At the time of the denial, I was working as an Order Filler earning $16.52 hourly.
>
> On or about February 2, 2005, Steve Olivera, Human Resources Manager informed me that I was denied because I did not have a doctor's release.
>
> I believe I was denied a reasonable accommodation for my physical disability, tendonitis (sic) in my left foot. My belief is based on the following:
>
>> On November 1, 2005, I gave my Doctor's release to Michelle Wester, Human Resource indicating my medical restrictions.
>>
>> On or about February 2, 2005, Steve Olivera, Human Resources Manager informed me that I was denied because I did not have a doctor's release.
>>
>> I believe that with an accommodation, I could have performed all of the essential functions of my position. I further believe that my accommodation would not have presented an undue hardship to my employer.

(Def.'s Ex. T. at 137.)

While the vague and conclusory nature of plaintiff's claim makes evaluation difficult, it certainly cannot be said that the allegations in plaintiff's amended complaint in this action are "like or related to" those found in her DFEH complaint. In her DFEH complaint plaintiff complained exclusively of disability discrimination. There were no facts or allegations relating to racial discrimination under any conceivable interpretation. Plaintiff has therefore failed to exhaust her administrative remedies with respect to this claim. Okoli, 36 Cal. App.4th

at 1615 (while race and national origin discrimination complaints may be like or related to one another, a complaint alleging race discrimination is neither like or related to a charge of sex discrimination and the expansion of a complaint under the latter circumstance would not be sanctioned). However, even if plaintiff had exhausted her administrative remedies with respect to her claim of racial discrimination, defendant would still be entitled to summary judgment in their favor with respect to such a cause of action.

To establish a case of racial discrimination in violation of FEHA, a plaintiff must prove (1) she was a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) some other circumstance suggests discriminatory motive. Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 355 (2000) (citations omitted).

Here, in response tp defendant's motion for summary judgment plaintiff has offered no evidence suggesting any of defendant's actions were the result of a discriminatory motive. In this regard, plaintiff testified at her deposition that she had no reason to believe that she was laid off for any reason other than due to a loss of business, that she was never treated differently because of her race while employed at defendant AmerisourceBergen, and that no one ever made any demeaning or negative remarks about her race while she was employed there. (Pl.'s Dep. at 73, 113.)

Accordingly, with respect to this claim plaintiff has failed to come forward with any evidence establishing the existence of a disputed issue of material fact requiring a trial.

F. Disability Discrimination

Plaintiff alleges that defendant discriminated against her based on her disability. (Doc. No. 1 at 20.) Defendant moves for summary judgment in their favor on this cause of action, arguing that it fails because it is undisputed that plaintiff could not perform the essential functions of her job with or without an accommodation, and because plaintiff has presented no evidence demonstrating a connection between her disability and any adverse employment action.

(Def.'s Mem. of P.&A. at 27-30.)

Claims for disability discrimination under FEHA are analyzed "under a three-step framework." Brundage v. Hahn, 57 Cal. App.4th 228, 236 (1997). FEHA proscribes both "disparate treatment discrimination" and "disparate impact discrimination." Scotch v. Art Institute of California-Orange Cnty., Inc., 173 Cal. App.4th 986, 1002 (2009). Here, plaintiff has alleged disparate treatment discrimination. With respect to such a claim,

> California uses the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination based on a theory of disparate treatment. This so-called McDonnell Douglas test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained. Under the McDonnell Douglas test, the plaintiff has the initial burden of establishing a prima facie case of discrimination.

(Id. at 1004) (internal citations and quotations omitted).

A prima facie case for discrimination "on grounds of physical disability under the FEHA requires plaintiff to show: (1) [s]he suffers from a disability; (2) [s]he is otherwise qualified to do [her] job; and, (3) [s]he was subjected to adverse employment action because of [her] disability." Faust v. California Portland Cement Co., 150 Cal. App.4th 864, 886 (2007).

> The employer then must offer a legitimate nondiscriminatory reason for the adverse employment decision. Finally, the plaintiff bears the burden of proving the employer's proffered reason was pretextual.

Brundage, 57 Cal. App.4th at 236 (internal citations omitted).

Once again, the precise nature of this claim is unclear due to the vague and conclusory nature of the allegations of plaintiff's amended complaint. Presumably plaintiff is claiming that either her termination or defendant's refusal to accommodate her disability was an adverse employment action. Even assuming arguendo that plaintiff could establish a prima facie case for discrimination on the grounds of physical disability, defendant would be entitled to

summary judgment in light of the evidence submitted in support of their motion.

In this regard, defendant has presented evidence that on March 2, 2005, plaintiff notified the company that she would be unable to work for twelve weeks due to foot surgery. (Westervelt Decl. at 4.) Plaintiff was laid off on April 1, 2005, due to a loss of business and pursuant to the applicable CBA. (Def.'s Ex. I; Decl. Howie at 2; Decl. Westervelt at 4.) On April 15, 2005 defendant attempted to rehire plaintiff, but plaintiff did not timely respond to defendant's letter inviting her to return to work. (Westervelt Decl. at 4.) In October of 2005 plaintiff sought to return to work but defendant had no existing vacant positions at that time that complied with plaintiff's physical restrictions. (Westervelt Decl. at 5.) On November 29, 2005, defendant again attempted to rehire plaintiff but plaintiff again failed to timely respond to defendant's return to work offer. (Def.'s Ex. Q; Decl. Howie at 3.) Finally, defendant has submitted evidence that plaintiff informed the company that she could not return to work until March 15, 2006, at which time the defendant was in the process of reducing its workforce in preparation for the closing of the National facility. (Decl. Howie at 3.)

The decision to discharge an employee as the result of the depressed condition of the defendant's business that renders the employee's services no longer needed "can be good cause for discharging the employee and can also support an inference of good faith, and of the absence of an improper motive, in the discharge decision." Martin v. Lockheed Missiles & Space Co., 29 Cal. App.4th 1718, 1732 (1994). See also Malmstrom v. Kaiser Aluminum & Chemical Corp., 187 Cal. App. 3d 299, 321 (1986).

Here, defendant has offered evidence of a legitimate nondiscriminatory reason for any adverse employment decision plaintiff might be alleging. Plaintiff bears the burden of proving that defendant's proffered reasons were pretextual. Scotch, 173 Cal. App.4th at 1004. Plaintiff has offered no such evidence. Plaintiff has therefore failed to come forward with evidence establishing the existence of a disputed issue of material fact requiring a trial.

/////

CONCLUSION

On the record before the court, plaintiff has not presented even a scintilla of evidence that defendant violated plaintiff's rights.  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment); see also Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) ("Therefore, a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'") (citation omitted).

In the absence of any evidence of a disputed issue of material fact regarding plaintiff's claims, the undersigned finds that defendant is entitled to summary judgment in its favor.  After adequate time for discovery, plaintiff has failed to make a showing sufficient to establish the existence of any disputed issue of fact regarding elements essential to her claims and on which she would bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322-23.  This complete failure of proof concerning essential elements of plaintiff's case renders all other facts immaterial and trial unnecessary.  Id.  The court will therefore grant defendant's motion for summary judgment in its entirety.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's September 29, 2009 motion for summary judgment (Doc. No. 30) is granted;

2. Plaintiff's October 28, 2009 motion to continue (Doc. No. 39) is denied; and

3. This Clerk shall enter judgment in favor of defendant and close this case.

DATED: September 21, 2010.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
rao1527.consent.msj.gr